May it please the Court, my name is Kevin Perkins. I represent the appellant Robert Seiden, the receiver for CVVT. Before I begin, I would like to reserve three minutes of my time for the end of the argument. The granting of the motion to dismiss on the affirmative defense of statute of limitations was improper for four reasons. First, under the Witten rule, knowledge is irrelevant, and since control is undisputed, the Brightline rule was applied incorrectly, and the granting of the dismiss was an error. Second, even under a more narrow reading of Witten, Witten states that knowledge of one shareholder is not a bar to the corporate rights when prosecuted by another shareholder. So it was legally and procedurally an error to bar the corporate rights. Another shareholder who acted promptly upon learning of the fraud. Correct, Your Honor, but what the court ruled in the district court was that not the distinction between two shareholders with knowledge, but that if some shareholder had knowledge, then there is a complete bar to all claims going forward. And under Witten, that is wrong. I thought maybe Witten could be read, although you have to read between the lines a little bit, to suggest that obviously if the knowledge that the first shareholder had was unique to that person and only available to that person, that would be one thing. But if instead the knowledge that that first shareholder had was actually sort of available on the public record, and therefore any shareholder could have known it, I guess I saw Witten maybe being open to the reading that, well, then it might be different, and that second shareholder might well be barred, even if that person can't, you know, isn't, there's not conclusive proof that they had actual subjective knowledge, they nonetheless would be deemed to have constructive knowledge of the same thing that was on the public record for everybody else to know. I take it you don't read the case that way, but that's kind of where I get stuck. Yes, Your Honor. Well, first, before I go into the more detailed explanation of the reading of Witten, just because something is on the public record, that doesn't mean there is a fact issue still at the motion for summary, or the motion to dismiss stage as to who had knowledge was a report by a short seller, and then some certain Southern District of New York cases, but there's no record that all shareholders had knowledge, and there's no record that certain shareholders had. Well, there's certain things that are so well known in the financial community. The question is, under your view that you've just expressed, you'd virtually have to get every shareholder to submit an affidavit as to whether he knew or he didn't, even though there was widespread knowledge in the community, in the investment community, about these various frauds. That doesn't seem to me to make a lot of sense. In fact, there were lawsuits brought by shareholders. One was, I believe one was a derivative, and one was a class, but I'm not sure, I'm not certain. I believe that, I would correct Your Honor that there was widespread knowledge. There's no record of what the knowledge was as to these frauds. But the Witten, but the Witten holding is, as I stated it, maybe I have it wrong, that's why I want to put it here. Witten doesn't say you've got to have the whole of the corporation, that if it is impossible to discover the wrongdoing, and the corporation is unable to seek their address, then you can get out of it. But it seems a little bit unusual that it would be impossible when there were filed class actions naming, in fact, these same defendants. There were filed derivative actions against directors, and there was a Citron report. It seems to me that it is very unusual, I can't find the reason why, it would be impossible to discover. And that's what I think Witten says. You can have the guy wrongdoer in control, you can have the wrongdoer not doing what he has to do, and as long as it is not possible, given that he's in control, to discover this wrongdoing, then guess what, you're going to be out. But in this situation, it was totally different than that. Everybody seems to be filing class actions, and derivative actions, and there was a Citron report. Well, I want to get back to the word of impossibility, but on the fact issues again, I don't want to concede to the court that everyone knew. Well, I don't think it's a matter of whether everyone knew, I think it's a matter of should they have known. Let's put it even that much, should they have known. I put it in possibility because knew or should have known. And in this particular instance, it seems should have known is pretty clear. Not at the motion, I don't believe it is, and not at the motion to dismiss stage. There's statute of limitations questions on know or should have known, and then we go and say, was there a time they should have known? And it isn't a matter of doing any more than saying, what is the evidence here? We've got a Citron report, which is damning. We've got filed class actions naming everybody and the defendants, and then we've got a derivative action against the directors. How one couldn't knew or should have known is impossible for me to understand. I would like to contrast this factual scenario that you just described, the Southern District of New York suits and the Citron report, which is a short seller report with the Enron case. This is not the Enron case where every night shareholders are coming home to headlines about the Enron scandal, and the Wall Street Journal was processing through all the different variations of the scandal. This is a China Valve Technology Inc. where a few cases were filed, an SEC dispute was had, and a short seller report came out. I think that to take the factual things too far would be an error. Should have known, I think there's a factual issue here. But back to your Honor's first question, that impossibility, that language is not in Witten. Well, I know, because I was trying to figure out what did I, when I read Witten, what did it really stand for? It seems to me that it should stand for if you can know, you should have known, then, and that's why I drafted it an impossible, because I was thinking, how would it have not been possible to know here? So I was giving you a better chance, even, I thought. Your Honor, we believe Witten stands for the issue of control. Yeah, it does, about control, but it isn't a matter of simple control, it's a matter of even though that shareholder is in control, does the other shareholders, do the other shareholders have the knowledge or the opportunity to have the knowledge of what's going wrong? If they don't, well, I think you're in the pink. But if they do, and in this situation it seems obvious they would have, then I'm having a tough time with your argument. I don't believe so, Your Honor, because the guardian ad litem language that is used in Witten is interesting. The guardian ad litem language goes to the issue of, it lends to, the clearest issue here is control, because the guardian ad litem is, and this is language from Witten, is in a representative fashion. They serve in a representative fashion, and that if a guardian ad litem is able to wipe away corporate rights, then we have an anomalous and absurd condition, that someone with knowledge is able to wipe away rights. In essence, I don't think Witten quite goes there, but what came up to us, because we do receivership law quite a bit, is you have the issue of imputing knowledge. Here, in essence, what you're doing, if you take that strict impossibility language in Witten that's not there, you're imputing knowledge from a shareholder to a corporation. Not an officer, director, or key employee to a corporation, but now you are imputing knowledge from a shareholder to a corporation and eviscerating corporate rights. Witten says that should not happen. Witten says that with the guardian ad litem issue, the right and duty of the court is to protect the interests of the incompetent. The court must be satisfied that the incompetent has had a full opportunity to have his day in court. In the answering brief, it is said that at some point a receiver and a shareholder could have a scheme to then revive statute of limitations. I think that is denigrating to the courts that appoint receivers and to the importance of the receiver plays in these contexts. But what could happen, if the shareholder's knowledge is imputed to the corporation, a wrongdoer, or even here a third party, could have their cousin go buy shares. That cousin does then have knowledge, and then corporate rights are eviscerated. That can't be the standard. We believe that Witten is focused on control, and that that is the clearest. We think that if there is any issue to a more narrow reading, it is that knowledge shareholder can be considered, but would not eviscerate the corporate rights. And then thirdly, Your Honor. But really, your argument there takes away from the clause on page 315 and 316 about when the corporation is, if you will, under disability and is powerless to act. But if you read the total clause, it doesn't say that. The total clause starts out about the individual shareholder may be put on notice that his corporation has been defrauded, and you go all the way through. What you're really talking about is the end of that clause, which is why I came to the idea that what we have here is as long as the bad actor is in control, and the other corporate shareholder has no way to know or couldn't have known, you may have a point. But where they have control and where there is control, but they have a way to know, I don't think that's what Witten says on 315, 316. Your Honor, I'm closing in on my time that I wanted to reserve, but I want to. I mean, if you can tell me how I'm reading that wrong. I'm looking at 315, 316, talking with an individual shareholder going down to an infant. You've emphasized the last part of that about the infant, but you don't talk about the first part of the phrase or doesn't. Maybe you sit down and talk about that when you come back. Go on with the rest of your argument. I'm glad to let you. I'm just saying I read that and read that, and I couldn't get there. This is an important point, Your Honor. I think one helpful thing would possibly be to read Witten in light of Mosesian, which is a Ninth Circuit case on here. And even in Mosesian, there's a statement that the test is that once the facts given rise to possible liability are known, that an informed stockholder or director could have induced the corporation to sue. We don't think that's a direct application of Witten, but even there, there is not this impossibility language. And in fact, on the should-have-known argument, Mosesian states, the question of what a reasonable, prudent investor should have known is particularly suited to a jury determination. That's in Ninth Circuit law in Mosesian. Your Honor, I am out of time. I would like to say just quickly we think that there is also a fact issue as to the issue of ability. What would the ability be to bring a claim? And the shareholders would have been in a derivative suit with imperio delicto applied against it, without an exception that is found in O'Malveny as to receivers. And the answering brief is essentially a public policy argument against imperio delicto and asking for an extension of that exception to receivers, to shareholders, which we don't find in any case law. Okay. Thank you. We'll hear from your opponents, and then you'll have some time for rebuttal. May it please the Court, Adam J. Rader on behalf of the appellees. In this case, the Witten case, the plaintiff in Witten was not a shareholder with knowledge of the wrongdoing, or should have had knowledge of the wrongdoing. Therefore, Witten as a California Supreme Court case does not control here because it's factually distinct and different. Several California Court of Appeals cases, as well as Ninth Circuit cases, hold that when shareholders had knowledge or should have had knowledge, or on inquiry notice, of the alleged wrongdoing by the bad actors, that the adverse domination doctrine does not toll the statute of limitations. In this case, we have, as was mentioned earlier, not only the Citron report and multiple class action lawsuits, and a shareholders derivative lawsuit, but also, and it's in the record, SEC investigations against both the main company and actually the Fraser Accounting Company. So at that point, the shareholders certainly knew or should have known of the wrongdoing, and Witten is just not on point. Is your theory that because these actions were, I guess as it were, filed on the public record, they're available to anyone who wanted to go to the courthouse to find them, is that why every single shareholder of the company should have known of the wrongdoing? They should have known because, hey, the information was out there, somebody could have tracked it down if they wanted to? Yes, they knew or should have known they were on inquiry notice. I mean, if you're investing and you're paying attention, and there are these class action lawsuits, it would be an impossibility, as was mentioned earlier, to get an affidavit from every single shareholder. But I think the showing has been made, and now the burden falls on the appellants to refute it, that during the normal course of an investigation, there's a lot of evidence. Of course, someone's invested, there's the Citron report, multiple SEC investigations, class actions where the class attorneys will be reaching out, that these shareholders knew or should have known. I think this is, the record here is really an extreme case, and in the other cases where shareholders knew or should have known, you don't have that same level. I'm just trying to figure out, is it they should have known because they should have been able to, they should have been monitoring, I guess, this company more closely and tracking the dockets of courts all over the country? To see if the company had been sued? Or is it rather that the underlying information of wrongdoing, they should have known about that? Because, hey, look, these other shareholders somehow figured out, they filed an actual lawsuit. There were so many. The information was out there, it was public knowledge. Which is, that's what I'm asking, those are two different theories of should have known. I would really say both theories, but particularly the public knowledge. The record shows that with all these lawsuits, with reports in the financial investment in the press, that the shareholders would have known of it. And there's nothing in the evidence to refute that. And the standard to try to prove that every shareholder knew about it, I think the burden at the point, with the mass of the record, I don't think it's going to work. I think the burden that we have will shift. Can you address the last point that your opponent made before sitting down about the ability? So, yes, fine, let's assume that you're right, that the knowledge was out there of this wrongdoing. But what if it were the case that none of these shareholders could even potentially gain any relief because of the in peri delicto doctrine, even if they had? Because none of the lawsuits that were brought obviously went anywhere. I don't remember what the grounds were for that. Well, they were dismissed. Right. But I don't think it allows the shareholders to sit on their rights. With respect to in peri delicto, A, I think it would be overly speculative, and there's nothing in the record to suggest that an in peri delicto defense was feasible here. And particularly, I respectfully direct the Court's attention to in the record, in the transcript before Judge Carney, ER 40, line 19, to ER 41, line 3, where Judge Carney essentially says, on this record, there's no in peri delicto. I'll read the quote for you. He says, the question I have for you, and he's speaking to appellant's counsel, is the wrongful conduct is of the people in charge. And if a derivative case is bought on behalf of the company because the people in charge are the alleged crooks, I don't see how that doctrine gets applied to the plaintiff, because I have these cases all the time. And if I am understanding what you're saying is, the wrongful conduct of the defendants will prevent a shareholder who's truly disinterested and independent from provision. I'm not following why is that? And there was no answer, as I recall in the record, for that. There's no in peri delicto defense here where the shareholders who would be bringing a derivative action are seeking to redress the wrongdoing that they personally had nothing to do with. Now, there was an appellant's site case, I believe, Rosenfeld, in which in peri delicto was addressed and raised as a defense in a shareholder derivative action. But Rosenfeld is factually distinguishable and irrelevant to the instant case. In Rosenfeld, it's a closely held corporation. The shareholders bringing the derivative action were part of the alleged wrongdoing to defraud either a bank or a company. The bank or an insurance carrier on a loan. So here, clearly, the allegations in the complaint do not state and can't state that the shareholders were part of this fraud. The allegation is that the directors controlled it and kept them from it. So I don't see any basis for in peri delicto. What was the basis for the dismissal of the, I don't know, I know it was called a shareholder action. I'm assuming it was a derivative action. It was shareholder class actions. There was a derivative action that was voluntarily withdrawn. Oh, I see. Without prejudice. That's the derivative action. I can't speak to why they did that, but I know that the shareholders had rights and they chose not to pursue it, perhaps to pursue the class actions. The class actions were securities fraud actions and were dismissed, at least as to Fraser, and it's in the record. It may have been to China Valve as well. I'm not sure. It's in the record. They were dismissed for failure to properly allege fraud and inability to prove fraud under the securities law. So it's been litigated. But the shareholders could have acted and they sat on their rights for whatever reasons. As the policy argument, we have here, again, shareholders who knew or should have known. They were on inquiry notice. They chose not to act. Their rights expired. Then a receiver's appointed. There's no basis to allow a receiver to have a do-over after the rights of the shareholders have expired. It would be one thing if the receiver's appointed, the claims are still viable. Then, of course, the receiver could bring the claim. And I don't believe any law has been cited to support a case where retroactively statute of limitations has expired because the shareholder's rights have expired. And the receiver's allowed to revive it because he's appointed. My understanding with the imperi delicto defense in reading the district court, the district court said, and I'll quote, whether an action by CBVT shareholders would be successful is not the point of the adverse domination inquiry regarding whether an informed shareholder or director of CBVT would be successful. And the district court said, if an informed shareholder or director has the ability to sue, on the other hand, the existence of the potential barrier to sue does not negate the ability to enforce the cause of action. And the district court says the question is that whether someone could have discovered the wrongdoing and sought redress. And that's why the district court said there was no imperi delicto argument to be made, correct? I agree that that's what the district court said. And I think that's a correct ruling based on the case law and authorities cited by the district court. However, on a date over review, even if that argument were not accepted as correct, which I think it should be, the record shows, and what may have been partially behind Judge Carney's, in his mind when he addressed it, is there is no possibility of an imperi delicto case. There is no possibility of an imperi delicto defense here, because, as he said, I see this all the time, and I don't see how you go, you know, how you can hold, how you would have been able to hold shareholders responsible for the wrongdoing of the directors if they brought a derivative case. It's in the argument, and I think that reasoning was correct, even if not articulated in Judge Carney's decision. Any other questions? I have nothing else at this time. Okay. Very good. Thank you. We'll hear from counsel for the plaintiff here. Thanks, Your Honor. Before I go back to knowledge, I would like to talk about imperi delicto for a few seconds. The Rosenfeld case is significant because it stands for the shareholders stand in the shoes of the company, and that was my response to the court. When you stand in the shoes of the company, then you have all the defenses and all the rights that the shareholder has. And it is common that when one bad actor brings a direct claim against another bad actor, here a company, an accountant, an imperi delicto is put forward, unlike the O'Melveny case, which made an exception for receivers based on equity. It was an imperi delicto with whom, as I understand it, the concept involves attributing to the corporation the wrongdoing of its officials. Correct, Your Honor. And I don't see how that applies here, where every one, as I understand it, of the directors was guilty of wrongdoing. You attribute, and they control the company, and you attribute their wrongdoing to the company? Is that what you're saying? Yes, and that actually gets distance from another area of law from imperi delicto, imperi delicto being a defense between two wrongdoers. What Your Honor is referring to is the adverse interest exception, and then there are some exceptions to that adverse interest exception. But the actions of the wrongdoers are imputed, and the knowledge of the wrongdoers are imputed to the corporation, and the shareholders step into that. Even if the shareholder is separate, if they decide to bring a shareholder derivative, they step into that. But even if they're innocent, and the corporation was run by a bunch of crooks, and they're suing to redress that wrong, the wrongdoing of the collection of crooks is still there. The wrongdoing of the collection of crooks is attributable to the corporation, and therefore the corporation was imperi delicto. Correct, Your Honor, correct, Your Honor, except for a receiver. And that's where we go back to the issue of Whitten. It's the representative nature of a guardian ad litem, Your Honor. Two points. It says that a guardian ad litem has no duty to sue. He gives consideration to time, trouble, and expense of the litigation. That's the problem of the impossibility of reading in Whitten, giving too much power to the shareholders who are in a representative fashion. Where Whitten, as we read it, says, you just look at, so long as the corporation remains under disability in its powerless act, the statute of limitations does not run. So when, so under your theory, when would the statute run against a receiver? It seems to me under your theory, as long as you appoint a receiver in these particular situations, you're going to have a chance for an action, even if all the shareholders well knew what the problem was. As long as they're not a part of those who are doing the wrong in the corporation. If they knew what was going on, if they knew all about it, they've got no reason to work, no reason to do anything with it, no reason to bring the action. All they've got to do is sit on their rights until one day all of a sudden they decide to appoint you. And then all of a sudden you have no statute of limitations. That would be your theory. I mean, that's the way I see you argue it. I don't think that's the strict ruling. I think that's what you wanted to say, such that in your instance, every time you have a chance with a new statute, just appoint a receiver every time, you'll have a new statute every time. We believe we went under that, and we believe we went under the narrow reading. But under that strict reading, yes, the language that was used inappropriately earlier was reviving the statute. And I think that's what you're getting to, Your Honor. We're not reviving a statute. This is equitable tolling. This is the statute does not begin to run until the bad actors are removed. The bad actors can be removed by reorganization of the company by good board members, by insolvency or trustee, or by receiver. And once these good, once the bad actors are removed, the Shoals case in this by Judge Posner reminds me of, he says when the zombie corporation tries to put their clutches onto the receiver, that does not work. The receiver has certain exceptions and comes in full. So, yes, we believe that, not revived, but they toll until, and that's balancing equities. Otherwise, bad actors and third parties can hold these companies in abeyance for until statute of limitations run out, and those company claims are never brought. Even though those same good actors, those same not bad actors file lawsuits, get a CTRON report that says you got a bad thing going here. They file a lawsuit against the very same people you want to file a lawsuit against. Plus, they file this other lawsuit, and yet, because they appoint the receiver, they get the new statute. That's your argument. A handful of shareholders brought certain lawsuits. It doesn't matter. Other shareholders later brought a receiver.
judges: N.R. Smith, Watford, Korman